In the Matter of the Probate of the Last Will and Testament of ANGELINA CRANE, Deceased.

EDITH H. SIMMONS, Appellant; THE FARMERS' LOAN AND TRUST COMPANY and Others, Respondents.

| 12 | 271 |
| 154a | 745 |
| 12 | 271 |
| 33 | 507 |
| 12 | 271 |
| 159a | 557 |

*A bequest to the city of New York to erect a drinking fountain " if such expenditure is sanctioned by law," is valid — it does not create a precatory trust — a bequest of more than one-half of an estate may be made to a municipal corporation.*

Angelina Crane, by the seventh clause of her will, made the following bequest: "*Seventh.* All the rest, residue and remainder of my estate, of every kind and description, wheresoever situated, and whenever the same may have been acquired, I give, devise and bequeath to the mayor, aldermen and commonalty of the city of New York, with the request that the same be expended, if such expenditure is sanctioned by law, in the erection of a drinking fountain in the city of New York to my memory." The city of New York had power to take a bequest of personal property, and was authorized to adopt ordinances in relation to the erection of public fountains for the use of men and animals. *Held,* that the bequest to the city of New York was absolute, and could be taken by the city;

FIRST DEPARTMENT, DECEMBER TERM, 1896.        [Vol. 12.

That the request, that it be utilized for a specific purpose, if that might lawfully be done, did not limit the absolute gift nor create a precatory trust;

That the words "if such expenditure is sanctioned by law," might be rejected, and the gift, being limited to one of the corporate purposes of the city of New York, would be valid;

That the provisions of chapter 360 of the Laws of 1860, prohibiting the gift by a testator, under certain circumstances, of more than one-half of his estate, did not apply to a gift to a municipal corporation.

APPEAL by Edith H. Simmons, contestant and only child and heir at law of Angelina Crane, deceased, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 28th day of July, 1896, admitting to probate the will of her mother, Angelina Crane, and construing certain provisions thereof.

The will reads as follows:

"I, Angelina Crane, of the city of New York, widow, being of sound mind and memory, do make, execute and declare this, my last will and testament, in form and manner following, to wit:

"*First.* I direct my debts and funeral expenses to be paid as soon after my death as practicable.

"*Second.* Inasmuch as my daughter, Edith Hawthorn Crane, now the wife of Robert S. Simmons, has treated me in a most undutiful and unnatural manner, I, therefore, give and bequeath to her the sum of five dollars and no more.

"*Third.* I give and bequeath to the 'Woman's Hospital in the State of New York,' located on Park and Lexington Avenues, in the city of New York, the sum of five thousand dollars, to be used for the establishment and maintenance of a free bed or beds to be known by my name.

"*Fourth.* I give and bequeath to the 'Home for Incurables' the sum of five thousand dollars.

"*Fifth.* I give and bequeath to 'St. Luke's Hospital' the sum of five thousand dollars.

"*Sixth.* I give and bequeath to the 'Tribune Fresh Air Fund,' popularly known as the 'Children's Fresh Air Fund,' the sum of five thousand dollars.

"*Seventh.* All the rest, residue and remainder of my estate, of every kind and description, wheresoever situated, and whenever the same may have been acquired, I give, devise and bequeath to the

mayor, aldermen and commonalty of the city of New York, with the request that the same be expended, if such expenditure is sanctioned by law, in the erection of a drinking fountain in the city of New York, to my memory.

"*Eighth.* I hereby nominate and appoint the Farmers' Loan and Trust Company, a corporation incorporated under the laws of the State of New York, executor of this my last will and testament."

The surrogate admitted this will to probate, and construed the provision in favor of the city to be valid. From that decree Mrs. Simmons appeals. No question is raised as to the execution of the will, or as to Mrs. Crane's capacity to make it.

*A. Prentice,* for the appellant.

*David McClure,* for the Farmers' Loan and Trust Company, respondent.

*Theodore Connoly,* for the Mayor, Aldermen and Commonalty of the city of New York, respondent.

*William Bard McVickar,* for St. Luke's Hospital, respondent.

*George C. Kebbe* and *James A. Speer,* for Home for Incurables, respondent.

BARRETT, J.:

The bequest to the city of New York, contained in the seventh clause of Mrs. Crane's will, was absolute. As to the right of the city to take, there can be no question. It enjoys the common-law right of taking personal property by bequest. (Ang. & Ames on Corp. § 177; Dillon on Mun. Corp. [4th ed.] § 566, and cases there cited.) It enjoys the same right by statute. It is authorized by both its ancient and modern charters, and by the laws of the State, to "take, hold, receive, enjoy and have   *   *   *   goods, chattels and all other things of what kind or quality soever." (Dongan Charter, § 6; Montgomerie Charter, § 1; Laws of 1732, chap. 584 [Van Schaack's ed.]; Laws of 1873, chap. 335, § 119; Const. of 1777, § 36; Const. of 1821, art. 7, §§ 14, 15; Const. of 1846, art. 1, § 17; Const. of 1894, art. 1, § 16; Consol. Act [Laws of 1882, chap. 410], § 26.)

FIRST DEPARTMENT, DECEMBER TERM, 1896.        [Vol. 12.

The gift, therefore, of the residue of Mrs. Crane's estate was inherently valid. (*Le Couteulx* v. *City of Buffalo*, 33 N. Y. 342.) But this gift is followed by a request that it be expended, if such expenditure is sanctioned by law, for a particular purpose, namely, "in the erection of a drinking fountain in the city of New York." The erection of drinking fountains in a city is clearly a corporate purpose. It is expressly recognized as such in the statutes of the State. Thus the erection of public fountains for the use of man and animals is referred to in the Consolidation Act (§ 86, subd. 24; § 688), and provision is there made for corporation ordinances in relation thereto.

We thus have an unconditional gift to the city, which is simply a gift for corporate purposes generally, followed by a request that it be utilized for one of those purposes, if this may lawfully be done. The effect of this request is not to limit the absolute gift of the residue, nor to create a precatory trust. To create a trust of the latter description, the precatory expression must concern individuals other than the trustee. Here we have simply a request upon Mrs. Crane's part to apply her bounty, if it may lawfully be done, to one of the purposes for which the city is authorized to hold property.

The respondents contend that the precatory words are qualified by the proviso; that the latter indicates doubt upon the testatrix's part; and that her request thus lacked the essential force of direct and unclouded volition. We need not consider this view of the case, though it certainly presents a serious question. We may, in fact, eliminate the proviso altogether, and treat the request as though the gift were simply followed by these words, "to be expended in the erection of a drinking fountain in the city of New York to my memory."

Thus treating the request as a distinct and unqualified expression of Mrs. Crane's will, it is still entirely valid. She had, as was said in *The Matter of Howe* (1 Paige, 215), "a right to limit his bounty to a part of the objects to which they (the private corporation there, the public corporation here) might appropriate the general funds of the corporation." The authorities are all one way to the same effect. In *Williams* v. *Williams* (8 N. Y. 531, never questioned upon this point), DENIO, J., said that a benefactor may apply his

bounty to the whole or any one or more of the various purposes for which the corporations are authorized to hold property. In *Coggeshall* v. *Pelton* (7 Johns. Ch. 292) the chancellor held that a pecuniary legacy to a town "for the express purpose of building or erecting a town house * * * for transacting town business," was valid. "The object of this legacy," he observed, "was a general public use, as convenient for the poor and the rich." In *Executors of McDonough* v. *Murdoch* (56 U. S. 413) the Supreme Court of the United States held that "a designation of the particular use, if within the general objects of the corporation," did not affect the result, namely, the valid operation of the bequest. It was held in *Wetmore* v. *Parker* (52 N. Y. 450) that a corporation created for charity may take by bequest and hold personal property limited by the testator to any of the corporate uses of the legatee; that such a bequest does not create a trust as that term is applied to property; and that the dictation by the donor of the manner of its use, within the law, does not affect the ownership, or make the corporation a trustee. In this connection Chief Judge CHURCH observed that "a person may transform himself into a trustee for another, but he cannot be a trustee for himself. * * * Its duties (that is, the duties of the corporation with regard to the bequest) are in some respects fiduciary, but not so as to interfere with its title to the personal property thus transferred."

This doctrine was followed and affirmed in *Bird* v. *Merklee* (144 N. Y. 544). "The fact," said Judge BARTLETT in this case, "that the testator has designated the purpose for which this legacy must be used does not indicate a desire upon his part to create a trust." The court then approves Judge DENIO's reasoning in *Williams* v. *Williams* (*supra*) to the effect that the testator may lawfully limit the application of his bequest to any one of the general purposes for which the corporation is authorized to hold property. This doctrine is quite as applicable to a municipal as to a charitable corporation. It was thus applied in England in the cases referred to by the chancellor in *Coggeshall* v. *Pelton* (*supra*), namely, *Attorney-General* v. *Clarke* (Amb. 422) and *Jones* v. *Williams* (Id. 651). In *Fosdick* v. *Town of Hempstead* (125 N. Y. 582) the gift was held to be invalid because it was not for any corporate purpose. For

that reason alone the above doctrine was not applied. PECKHAM, J., refers, however, to the cases of private and charitable corporations, where the rule is, that the gift, " in order to take effect as an absolute one, must be for some one or all of the purposes for which the corporation was created." This learned judge then says : " It is this circumstance, that the gift in this case is not for corporate purposes, which takes it out of the principle upon which the cases cited were decided." This distinction was averted to in *Bird* v. *Merklee* (*supra*), where Judge PECKHAM's language, that there must be a gift for some corporate purpose, was quoted by Judge BARTLETT, the latter judge closing in these words applicable to the case then before the Court of Appeals : " It was simply saying that the gift was for the purpose of aiding the corporation in the discharge of some of its corporate functions."

There can be no doubt, therefore, both upon reason and authority, that the gift of the residue was here valid. It was valid if applicable to corporate purposes generally. It was equally valid if limited to one of those purposes.

The point is also taken that the bequest to the city conflicts with the provisions of chapter 360 of the Laws of 1860, prohibiting the gift by a testator, under certain circumstances, of more than one-half of his estate. But this act only applies to benevolent, charitable, literary, scientific, religious or missionary societies — in other words, to a particular class of private corporations. It does not apply to the State, nor to individuals, nor to public or municipal corporations. The maxim " *expressio unius est exclusio alterius* " is here applicable. It is true that the purpose of the act was as pointed out in *Chamberlain* v. *Chamberlain* (43 N. Y. 440), " to prevent a person upon whom others standing in near relation had claims, from disappointing their just expectations and disinheriting them from pious or philanthropic motives." As a practical limitation upon such a purpose, the various societies, associations or corporations likely to be considered by one contemplating disinheritance, were enumerated and placed under the special prohibition. The object was not specifically to prevent a person from disinheriting those having claims upon him, nor to limit the power of disposition generally. The danger was supposed to be in the occasional tendency to disinherit from pious or philanthropic motives. And thus the societies which fur-

nished the readiest facilities for the gratification of this impulse were specified. In all other directions it was thought that testators might properly be left to the operation of natural laws. The cases to which the appellant refers (*Bascom* v. *Albertson*, 34 N. Y. 617; *Chamberlain* v. *Chamberlain*, 43 id. 440) do not conflict with this view. They are simply directed against evasions of the act, holding that it cannot be eluded by a gift of more than one-half of the estate to two or more corporations in the aggregate, nor by a gift of the whole estate to a private trustee for the precise benevolent objects to which the one-half was limited. But that is not this case, nor is either of the illustrations in point. Here, there is no evasion nor attempt to elude the prohibition. There is merely a gift to a corporation which is not within the prohibition.

We may add that, in no aspect of the case, could probate have been properly refused. For, even if the gift to the city were entirely invalid, the other legacies are unaffected by the invalidity. They are largely within one-half of the estate. What the city takes is the residue after the payment of these legacies. And even if the city were one of the defined corporations, and within the act of 1860, it would still take a part of that residue, for it appears that the estate is of the value of about $70,000. The total amount of the general legacies is but $20,000. That would still leave some $15,000 to go to the city without passing beyond the one-half of the estate which the testator was authorized by the act to give to the specified institutions.

The decree was in all respects right and should be affirmed, with costs to the respective respondents who have filed briefs upon this appeal, payable out of the estate.

Van Brunt, P. J., Rumsey, Williams and Patterson, JJ., concurred.

Decree affirmed, with costs to the respective respondents filing briefs upon this appeal, payable out of the estate.